Appellant Theresa Shock appeals from an order of the trial court awarding permanent custody of her four minor children to the Montgomery County Children Services Board, and terminating her parental rights. Shock contends that the trial court erred because the Board failed to show, by clear and convincing evidence, that it made a good-faith attempt to implement the reunification case plan, because there was no clear and convincing evidence that the Shock children could not be returned to their mother within a reasonable time, and because the trial court did not make sufficiently detailed findings to justify its decision. We conclude that the trial court correctly determined that the Board made reasonable efforts to implement the reunification plan, but that the action of the mother in fleeing the jurisdiction rendered those efforts futile. We further conclude that the trial court's findings are sufficient to justify its decision. Accordingly, the judgment of the trial court is Affirmed.
 I
The four children who are the subject of this appeal are Ashley, born July 24, 1983; Amber, born January 2, 1986; Autumn, born June 18, 1987, and Asia, born October 20, 1989.
In 1991 or 1992, their mother, Theresa, began abusing drugs, and her relationship with, and care for, the children deteriorated. In late 1994, the Board removed the children from Theresa's care. In June, 1995, temporary custody was awarded to the Board, and the girls were placed in foster homes.
A reunification case plan was drawn up in February, 1995. The plan set forth seven objectives, with a projected completion date of November 30, 1995.
Theresa visited with the children in March, 1995. Theresa testified that someone from the Board explained the case plan objectives to her.
Pursuant to the case plan, Theresa was to have a drug assessment, which was done. The result of the assessment was a recommendation that she have inpatient treatment. At this point, Theresa's testimony is worth considering in some detail:
Q. And you never attended any inpatient treatment?
A. No.
Q. Why not?
A. I was just too busy getting high.
 Q. Okay. And was anger management classes also on your case plan?
 A. Yeah. I went to a class; it was about six hours long. It was anger management class.
Q. Where did you take that class?
A. On Salem Avenue, probation department.
Q. That was also through the probation department?
A. Yeah.
Q. Did you complete that class?
A. Yeah.
Q. And when was that?
A. It was like the beginning of `95.
Q. Were visitations set up in the initial case plan?
A. Yes.
Q. And did you visit with the children?
A. I did until I had a warrant for me and didn't go.
 Q. I believe Ms. Mann testified that you visited one time in March?
 A. That was last year when they were first taken I went to see them.
Q. How often?
A. I just went one time.
 Q. And why was the reason you didn't visit more often than that?
 A. Well, I first — at first they said I couldn't visit until they counseled them or something, and then I got a warrant for me and I didn't never come back.
 Q. When were you first aware of the warrant for your arrest?
 A. It was while the children — well, let's — I didn't — I still had custody of the children so it wasn't even after that.
 Q. And the reason that you're stating that you didn't complete the case plan is it because you didn't want your children back at that time or because you were fleeing the warrant?
 A. I was fleeing the warrant and I also thought they'd be better off without me. It was all I cared about was the prescriptions.
 Q. Then you were picked up in May of `96; is that correct?
A. Yeah.
Q. Where were you arrested?
A. Kmart.
Q. What — in Montgomery County?
A. Yeah.
In December, 1995, the Board moved for a permanent custody. Because Theresa's whereabouts were not known, service was made by publication of a notice of hearing on the motion to take place on February 5, 1996. On that date, the hearing was continued to May 16, 1996, to allow time for an attorney to be appointed to represent the absent mother. Thereafter, the hearing was continued to August 1, 1996, apparently as a result of Theresa' s having been arrested.
Theresa testified that she was incarcerated beginning May 31, 1996, but it appears that the trial court was aware of her arrest on or before May 23, 1996.
A hearing was held on August 1, 1996, and Theresa appeared, represented by counsel. Following the hearing, the trial court awarded permanent custody of the children to the Board. From that order, Theresa appeals.
 II
Theresa's First Assignment of Error is as follows:
 THE MAGISTRATE'S DECISION SHOULD BE REVERSED BECAUSE MCCS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT MADE A GOOD FAITH ATTEMPT TO IMPLEMENT THE SHOCK FAMILY REUNIFICATION CASE PLAN AS REQUIRED BY R.C. 2151.414 AND R.C. 2151.419(A) AND THEREFORE, THE MAGISTRATE'S DECISION DID NOT COMPORT WITH THE DICTATES OF R.C. 2151.419(B).
Theresa relies upon R.C. 2151.419(A), which provides that the agency seeking permanent custody has the burden of proving that it has made reasonable efforts to make it possible for the child to return home. Theresa contends that the Board failed to so prove. In their testimony, Karie Mann, the Board caseworker involved, and Theresa were consistent in that both of them recognized that the Board and Theresa communicated concerning the case plan objectives for reunification, and that Theresa had made at least some effort, including attending an anger management class, when Theresa fled the jurisdiction because of warrants outstanding for her arrest. Mann's unrebutted testimony was that Theresa's whereabouts became unknown until she was arrested in May, 1996. This was six months after the projected completion date of the case plan, well after the original hearing date, and about two months before the date of the hearing that actually took place.
Theresa is reduced to arguing that the Board knew her whereabouts when her mother informed Mann that Theresa "could be in Florida, she could be in Colorado, Kentucky." No one testified that Theresa's whereabouts were communicated with any greater precision than this. Mann's unrebutted testimony is that the Board made efforts to locate Theresa, but was unable to find her until she was arrested and incarcerated in May, 1996.
On these facts, it cannot be said that the Board failed to make reasonable efforts to make it possible for the children to return home. Reasonable efforts should not be deemed to include the impossible, and when Theresa fled the jurisdiction to avoid arrest, it became impossible for the Board to locate her.
It is worth noting that the Board, during this time, contacted a number of relatives in efforts to place the children with relatives, but only one of them, Theresa's mother, Barbara Shock, was ultimately willing to consider a placement. Barbara Shock considered taking the oldest child, Ashley, but candidly and agonizedly acknowledged, in her trial testimony, that she really didn't know whether she wasup to it.
Theresa's First Assignment of Error is overruled.
 III
Theresa's Second Assignment of Error is as follows:
 THE MAGISTRATE'S DECISION MUST BE REVERSED BECAUSE IT WAS CONTRARY TO CONTROLLING STATUTES AND CASE LAW AT THE TIME OF THE PERMANENT CUSTODY HEARING.
The Decision of Magistrate and Judge's Order from which this appeal is taken includes the following findings of fact and conclusions of law: FINDINGS OF FACT 1. Asia, Ashley, Autumn, and Amber Shock are the minor children born on June 18, 1987, July 24, 1983, October 20, 1989, and January 2, 1986.
2. The Agency has made reasonable efforts to:
 a. prevent the removal of the children from their home.
 b. eliminate the continued removal of the children from their home; and
 c. make it possible for the children to return home.
 3. The Agency has provided case management, diagnostic, information and referral, substitute care, therapeutic services, and counseling to the family.
 4. These services neither prevented the removal of the children from their home nor enabled her to return home.
 5. The mother's whereabouts where [sic] unknown until May of 1996 at which time she was incarcerated and sent to The Women's Correctional Facility at Marysville.
 6. The mother admitted to a substance abuse problem.
 7. The mother admitted she had limited contact with her children until being incarcerated because she believed it was in the best interest of the children to be out of her custody.
 8. It is futile to attempt to reunify the children with the natural mother.
9. The father is deceased.
 10. The mother did not complete any of the case plan.
 11. The mother has not provided support for the children.
 12. There are no relatives willing or able to accept legal custody of the children.
 13. There are no non relatives willing or able to accept legal custody of the children.
14. The children are adoptable.
 15. The Agency has a reasonable expectation that the children will be adopted.
 16. The Guardian ad Litem recommends that Montgomery County Children Services Board be granted permanent custody of the children.
 CONCLUSIONS OF LAW 1. In accordance with Division (E) of § 2151.414 of the Ohio Revised Code, there is clear and convincing evidence that the children cannot be placed with either of their parents within a reasonable time because the father is deceased and the mother has not provided any support or care for the children since they were placed with the Montgomery County Children Services Board.
 2. In accordance with Division (D) of § 2151.414 of the Ohio Revised Code, there is clear and convincing evidence that the commitment of the children to the permanent custody of the Montgomery County Children Services Board is in the best interest of the children.
Theresa argues that these findings are too vague, citing Inre William S. (1996), 75 Ohio St.3d 95. In that case, the Supreme Court held that a trial court cannot rely upon factors other than those set forth in R.C. 2151.414(E)(1) through (4), in finding that a child cannot be placed with either parent within a reasonable time.
R.C. 2151.414(E)(4) provides, as one of the grounds upon which a finding that the child cannot be placed with either parent within a reasonable time, the following:
 The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child [.].
In our view, in its first-numbered conclusion of law, in which the trial court referenced R.C. 2151.414(E), and stated that there was clear and convincing evidence that the children could not be placed with either of their parents within a reasonable time because the father was deceased and the mother had not provided any support or care for the children since they were placed with the Montgomery County Children Services Board, the trial court sufficiently invoked the factors set forth in R.C.2151.414(E)(4).
From the record, it is clear that Theresa fled Ohio some time in early 1995, in order to avoid being arrested, and for the purpose of continuing her abuse of certain prescription drugs. This supports the trial court's findings.
Theresa's Second Assignment of Error is overruled.
 IV
Theresa's Third Assignment of Error is as follows:
 THE MAGISTRATE'S DECISION MUST BE REVERSED BECAUSE THERE WAS NO CLEAR AND CONVINCING EVIDENCE THAT THE SHOCK CHILDREN COULD NOT BE RETURNED TO THEIR MOTHER WITHIN REASONABLE TIME AS REQUIRED BY R.C. 2151.414(A) (E).
We have reviewed the entire transcript, and we are satisfied that the Board proved, by clear and convincing evidence, that Theresa had demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with them when able to do so, and by other actions showing an unwillingness to provide an adequate permanent home for the children. This is set forth in R.C. 2151.414(E)(4) as a factual circumstance requiring a finding that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent. By fleeing the jurisdiction, and by failing to communicate with the Board until after she was arrested, six months after the projected completion date of the reunification case plan, Theresa clearly evinced an unwillingness to provide an adequate permanent home for her children, especially in view of her admission that her decision was based, at least in part, upon her need to continue abusing drugs.
Although Theresa has not argued the best interests of the children, it is worth noting that there is testimony in the record with respect to each of the four children that the child requires the stable environment of a permanent placement. In other words, there is testimony in the record that these children have been in limbo long enough. Theresa's Third Assignment of Error is overruled.
 V
All of Theresa's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WOLFF, JJ., concur.
Copies mailed to:
Karyn J. Lynn
Richard W. Schulte
Hon. Michael Murphy